## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| GRACE ANNA JONES, | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| vs. | ) | Case No. 5:11-CV-3222-CLS |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Claimant Grace Anna Jones commenced this action on September 7, 2011, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinion of her treating physician and improperly evaluated her credibility, and that the Appeals Council failed to remand for consideration of additional evidence submitted after the ALJ's decision. Upon consideration, the court concludes those that the claimant's arguments are without merit, and the decision of the Commissioner is due to be affirmed.

## A.   Treating Physician

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the

Commissioner."  20 C.F.R. § 416.927(e).  Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors.  *See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Kyle Hudgens, claimant's treating neurologist, completed a "Seizures & Headaches Medical Assessment Questionnaire" on April 1, 2009.  He stated that claimant had two to three headaches each month, with each one lasting two to seven days, and during which she was bedridden.  She also experienced vertigo, nausea, vomiting, malaise, photosensitivity, visual disturbances, mood changes, mental confusion, and inability to concentrate in connection with the headaches.  Her headaches were triggered by lack of sleep, menstruation, stress, strong odors, and hunger, and they were exacerbated by bright lights, movement, and noise.  The

headaches were made better by lying in a dark room, finger pressure or massage, cold or hot packs, and medications. Claimant also experienced both generalized and localized seizures with accompanying loss of consciousness, but those had been controlled over the last eight months.[1] Dr. Hudgens indicated that claimant would not need more supervision at work than an unimpaired worker, but she could not work at heights or with power machines. She could, however, operate a motor vehicle if she was seizure-free for six months and take a bus alone. She did not have any mental problems associated with her neurological issues. She would not need to take unscheduled breaks during an eight-hour work day. She could tolerate only a low-stress job, because stress would increase the frequency of her symptoms. Her impairments would likely produce "good days" and "bad days." She would be absent from work approximately four days each month due to her impairments. Finally, Dr. Hudgens indicated that claimant's symptoms and limitations had existed since December of 2007.[2]

The ALJ assigned only little weight to the form completed by Dr. Hudgens,

---

[1] Dr. Hudgens' assessment said more about claimant's seizure disorder, but claimant only challenges the ALJ's treatment of that assessment with regard to headaches. *See* doc. no. 9 (claimant's brief), at 8 ("The Administrative Law Judge (ALJ) erred n failing to give controlling weight to the treating neurologist's opinion, which was uncontradicted, regarding the frequency and severity of Ms. Jones' *headaches* and their effects on Ms. Jones' ability to work.") (emphasis supplied). In any event, Dr. Hudgens stated that claimant's seizure disorder had been controlled for the past eight months.

[2] Tr. 252-56.

reasoning as follows:

> Although the doctor has a treating relationship with the claimant, the record reveals that actual treatment visits have been very infrequent. Dr. Hudgens opines that the claimant would miss "about four days per month" from work however such statement is based on no objective evidence and is a prediction of a possible future limitation. The doctor's assessment is also inconsistent with his own treating records which fail to ever comment on any of the symptoms he noted in the "Questionnaire" which makes it even less persuasive. Moreover, the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant suffered the frequency and severity of such impairment. The fact is that no limitations were ever expressed in any of Dr. Hudgens' medical records. This attorney generated form completed by Dr. Hudgens lacks any persuasive weight as it is unsupported by his own records as well as the other evidence.[3]

Elsewhere in the administrative opinion, the ALJ stated:

> Interestingly, on April 1, 2009, the very day that Dr. Hudgens completed the "Seizures and Headache Questionnaire," he noted the claimant['s] seizures were "well-controlled" on the Trileptal and she was five weeks post-partum. The claimant was continued with the same medicines and it was recommended that she return in six months or sooner, if needed (Exhibit 11F). The claimant never returned. Interestingly, none of Dr. Hudgens' brief treatment notes noted any of the severe symptoms he noted in the "Questionnaire." This "form" is unsupported by the doctor's own examination notes and by the other medical evidence. Given such an opinion that a claimant is totally disabled and suffers such intractable headaches and seizures, one might expect to see some indication in the treatment records the severe restrictions placed on the claimant by Dr. Hudgens. Such "form" appears to be medical sophistry and is given little weight as noted below.[4]

---

[3] Tr. 24.

[4] Tr. 19-20.

The ALJ also stated:

> Although the claimant testified to disabling migraines, and submitted "Questionnaire" form from a treating source, such "form" lacks support even from the doctor's treating notes.  Accepting the doctor's diagnosis of migraine headaches, the "form" submitted reflects exaggerated limitations.  Given such an opinion that a claimant is totally disabled and suffers seizures and such intractable headaches, one might expect to see some indication in the treatment records [of] the severe restrictions placed on the claimant.  Dr. Hudgens' records lack any such notations.[5]

The court concludes that the ALJ properly considered Dr. Hudgens' Questionnaire.  The reasons given by the ALJ for assigning the opinion only little weight — including infrequent treatment visits, lack of objective supporting evidence, inconsistency with Dr. Hudgens' own treatment records, and conservative course of treatment — are all valid reasons for failing to give a treating physician's opinion controlling weight.  *See, e.g., Phillips*, 357 F.3d at 1240-41; *Wheeler*, 784 F.2d at 1075; 20 C.F.R. § 404.1527(d).  Moreover, the ALJ's conclusions were supported by substantial evidence existing at the time of the ALJ's decision, particularly Dr. Hudgens' own treatment records.[6]

## B.   Credibility

Claimant next argues that the ALJ improperly considered her subjective

---

[5] Tr. 22 (alteration supplied).

[6] *See* Tr. 217-18, 249-50, 257-58.  The court will address Dr. Hudgens' records dated *after* the date of the administrative decision, as well as Dr. Hudgens' deposition, later in the opinion, the section devoted to the discussion of new evidence submitted for the first time to the Appeals Council.

testimony about the extent of her limitations.  To demonstrate that pain or another subjective symptom renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  If an ALJ discredits subjective testimony on pain, "he must articulate explicit and adequate reasons."  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).  Furthermore, once an ALJ determines whether the pain standard has been met, he can move forward to consider whether claimant's complaints are credible in light of the substantial evidence of record.  *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).  In making the credibility determination, the ALJ should consider such factors as:  the objective medical evidence; other statements by medical providers; work history; other people's observations; daily

activities; location, duration, frequency, and intensity of the alleged symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; treatment other than medication; other measures used to relieve the symptoms; and other factors.

Here, the ALJ found that claimant's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, but he nonetheless concluded that claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with a residual functional capacity to perform a limited range of work at all exertional levels.[7]  The ALJ stated that while he did not doubt that claimant sometimes experienced headaches, claimant's allegations about the severity and frequency of her headaches was unsupported by the medical and other evidence.  In evaluating claimant's credibility, the ALJ also considered claimant's use of mostly over-the-counter medications, her moderate treatment history, her daily activities, and the lack of medical documentation to support her condition.

Claimant complains that the ALJ exaggerated the extent of her daily activities and mischaracterized her testimony about why she quit work, but, with the exception of erroneously stating that claimant regularly used the computer, the court finds that the ALJ's conclusions are supported by the record.  Moreover, the ALJ did not rely

---

[7] Tr. 20, 22.

*solely* upon claimant's daily activities or her reasons for quitting work to discredit her statements about her symptoms.  Instead, those factors were considered along with several others in the ALJ's credibility determination.

Claimant also challenges the ALJ's consideration of her infrequent and conservative treatment history, asserting that the only reason she did not take more medication or go to the doctor more frequently was because she could not afford to. It is true that "poverty excuses [a claimant's] noncompliance" with medical treatment. *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) (alteration supplied).  Thus, "while a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment *and can find no way to obtain it,* the condition that is disabling in fact continues to be disabling in law.'" *Id.* (quoting *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir. 1986)) (emphasis supplied). Here, the ALJ acknowledged claimant's allegations of inability to afford treatment, but he appeared to discredit those allegations, stating, "there is no indication that [claimant] was refused treatment by any doctor or that her treating doctor would not have provided samples of medications in order to determine whether they were effective."[8]  It is true that there is no evidence regarding whether claimant attempted to obtain additional care or medication despite her lack of medical insurance and inability to afford treatment.  It also is true that the ALJ did not take any additional

---

[8] Tr. 23 (alteration supplied).

9

steps to attempt to obtain evidence on that issue.  Even so, any error on the ALJ's part appears to be harmless, because it is clear from his written decision that he did not rely solely upon claimant's failure to obtain treatment in evaluating her credibility. Instead, the ALJ stated that "credibility must be assessed *primarily* on the basis of the extent to which symptoms and allegations are consistent with and supported by the medical evidence,"[9] and consistency with the medical evidence was discussed more by the ALJ than any other credibility factor.  *See Beegle v. Social Security Administration, Commissioner,* 482 F. App'x 483, 487 (11th Cir. 2012) ("[T]he ALJ must consider evidence showing that the claimant is unable to afford medical care before denying disability insurance benefits based upon the claimant's non-compliance with such care. . . .  Nonetheless, reversible error does not appear where the ALJ primarily based her decision on factors other than non-compliance, and where the claimant's non-compliance was not a significant basis for the ALJ's denial of disability insurance benefits.") (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1275-76 (11th Cir. 2003)).   It already has been determined that the ALJ's consideration and weight of Dr. Hudgens' assessment was supported by substantial evidence and in accordance with applicable legal standards.  Thus, the ALJ was not required to rely upon that assessment in evaluating claimant's credibility, and his consideration of Dr. Hudgens' treatment records and the other medical evidence of

---

[9] Tr. 23 (emphasis supplied).

record was supported by substantial evidence.

## C.    New Evidence

Finally, claimant asserts that the Appeals Council should have reversed the ALJ's decision in light of new evidence that was presented to it after the ALJ's administrative decision, or that the Appeals Council should at least have remanded the case to the ALJ for further consideration of that evidence.

> When a claimant submits new evidence to the AC, the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. *Ingram,* 496 F.3d at 1262.   Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67.  The new evidence must relate back to the time period on or before the date of the ALJ's decision.  20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008).

The new evidence in this case includes the following: (1) updated medical records from dated September 27, 2010 from Dr. Hudgens;[10] (2) deposition testimony of Dr. Hudgens;[11] and (3) treatment records from Dr. Swader, another neurologist who treated claimant between November 2010 and April 2011.[12]   The Appeals Council considered this evidence but found that it did not provide a basis for

---

[10] Tr. 327.

[11] Tr. 286-325.

[12] Tr. 261-83.

changing the ALJ's decision.[13]  Accordingly, the Appeals Council denied claimant's request for review.[14]  That decision was in accordance with Eleventh Circuit law and was supported by substantial evidence.   The ALJ's decision was rendered on February 10, 2010,[15] but Dr. Hudgens' supplemental record is from September 27, 2010, and Dr. Swader's records ranged in time from November 2010 to April of 2011. There is no indication why these records, from dates ranging between seven and fourteen months after the ALJ's decision, should relate back to the time period on or before that decision, or, even if they did, why they would constitute a basis for overturning the administrative decision.  The court also does not find anything in Dr. Hudgens' deposition that would warrant changing the ALJ's administrative decision. Dr. Hudgens' deposition was given on May 10, 2010, more than a year after he last saw plaintiff as a patient.  Dr. Hudgens explained that his patient treatment notes are brief because they are a tool that enables him to keep up with a patient's treatment and enables his partners to quickly learn about the patient's history if they need to treat the patient in his absence.  He also stated that patient histories are important and that there generally are no objective tests for migraines.   Those statements are generalities that could be true in any medical practice, and they have no particular

---

[13] Tr. 1-2.

[14] Tr. 1.

[15] Tr. 26.

bearing on this case.  Dr. Hudgens also explained that his estimate that claimant would miss up to four days of work each month was based upon claimant's subjective reports of how many days she had headaches.  Because that statement was based solely upon claimant's subjective reports, it actually bolsters the ALJ's decision to discredit Dr. Hudgens' report.  Dr. Hudgens also explained that, during part of the time he was treating claimant, she had a high-risk pregnancy, so the doctor was limited in the types of treatment he could prescribe, and claimant's treatment was focused on issues, like her seizure disorder, that impacted more on her pregnancy. That may be so, but it does not change the fact that, when the ALJ was deciding whether to credit Dr. Hudgens' assessment, there was little mention of severe headache symptoms or treatment for those symptoms in Dr. Hudgens' records. Finally, Dr. Hudgens stated that there was no indication that claimant was malingering during the time he treated her, but that is of little significance, because the ALJ did not make his decision based upon any allegations of malingering; he based it upon the inconsistency of claimant's subjective allegations with the medical evidence of record.  In short, there is nothing in Dr. Hudgens' deposition that is contradictory to, or would constitute changing, the ALJ's administrative decision.

## D.    Conclusion and Order

In summary, the court finds that the decision of the Commissioner was in

accordance with applicable law and supported by substantial evidence.  Accordingly,

the decision of the Commissioner is AFFIRMED.  Costs are taxed against claimant.

The Clerk is directed to close this file.

      DONE this 6th day of May, 2013.

                                    _____
                                      United States District Judge

14